UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CERTAIN UNDERWRITERS AT
LLOYDS OF LONDON,

        Plaintiff,

     v.                                    Case No. C-1-05-572

JEFF WYLER DEALER GROUP, INC.,

        Defendant.

## ORDER

This matter is before the Court upon plaintiff's motion for summary judgment (doc. 48), defendant's opposing memorandum (doc. 52), and plaintiff's reply (doc. 53).  The parties have filed proposed findings of fact and conclusions of law, which the opposing side has highlighted as true, false, or irrelevant (docs. 56, 57).  For the reasons stated below, the Court finds that there are disputed questions of material fact which preclude summary judgment as a matter of law.

### I.  Introduction

Plaintiff Certain Underwriters at Lloyds of London (Lloyds) brings a complaint for declaratory judgment against defendant Jeff Wyler Group, Inc. (Wyler).  Jurisdiction is premised on diversity of citizenship pursuant to 28 U.S.C. § 1332.  Lloyds seeks a declaration regarding its obligations under an Employment Practices Liability Insurance Policy (Policy) that it underwrote and issued to Wyler.  The Policy contains a notice provision, which Lloyds claims Wyler violated by failing to timely notify Lloyds of a discrimination charge that Patricia Cameron-Lytle had filed against Wyler on or about August 28, 2001.  Plaintiff seeks (1) a declaration that

the Policy provides no coverage for, and Lloyds has no obligation to defend and/or indemnify Wyler against, the Cameron-Lytle claim, and (2) such other relief to which Lloyds might be entitled.

Wyler brings a counterclaim against Lloyds for breach of the Policy terms. Wyler claims that Lloyds' denial of its claim was a breach of Lloyds' obligations under the Policy; Wyler is entitled to a declaration and adjudication by the Court that its claim is covered as of November 13, 2001, the date of the alleged original notice; Wyler is entitled to a declaration and adjudication by the Court that Lloyds is judicially or otherwise estopped from asserting that Wyler's claim can be denied because it was not timely or properly reported; and Lloyds' denial of coverage of the claim was a breach of the implied duty of good faith and fair dealing.

## II.  Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may grant summary judgment as a matter of law only when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. **Celotex Corp. v. Catrett**, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." **Anderson v. Liberty Lobby**, 477 U.S. 242, 248 (1986) (quoting **First Nat'l Bank of Arizona v. Cities Serv. Co.**, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. **Anderson**, 477 U.S. at 255 (citing **Adickes v. S.H. Kress & Co.**, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to

decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.  There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289).  If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted.  *Anderson*, 477 U.S. at 249.

### III.  Request for oral argument

Defendant has requested oral argument on the summary judgment motion.  Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, a party may request oral argument on a summary judgment motion on the ground that oral argument is essential to a fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented.

The legal and factual issues involved in this case have been fully briefed by the parties.  The Court finds that oral argument would not further assist it in resolving the issues presented by the summary judgment motion.  Accordingly, the request for oral argument is denied.

### IV.  Undisputed facts

The following facts are not in dispute:

1. Lloyds issued Employment Practices Liability Insurance Policy, Policy No. FD020020Z002, to Wyler.  The Policy covers loss amounts the "Insured" is legally obligated to pay on account of a "Claim" by a "Claimant" or "Third Party Claimant" because of an "Insured Event."

2. Section III.A of the Policy defines "Claim" as follows:

> 1) a letter, written complaint or demand where specific charges of Discrimination, Harassment and/or Inappropriate Employment Conduct are made against the Insured or where specific charges of discrimination against or harassment of a Third Party Claimant are made against the Insured; 2) a written demand for money damages; 3) a charge, administrative complaint or other notice of the commencement of a federal, state or local administrative proceeding; 4) the filing of a civil complaint, action or lawsuit; 5) the filing of an arbitration proceeding . .

3. Section II of the Policy, "Defense of Claims," provides that Lloyds has a right and duty to defend any Claim because of an Insured Event made or brought against any Insured to which the Policy applies; it has a duty to pay any Loss that results from a Claim because of an Insured Event made or brought against any Insured and to pay "Defense Costs" incurred for the defense of any Claim controlled by Lloyds; and it has the right to investigate and settle any Claim in the manner and to the extent Lloyds believes is proper.

4. Section XI of the Policy, "Conditions," states that Lloyds has "no duty to provide coverage under this policy unless there has been full compliance with all of the conditions contained in this policy." Section A.1 sets forth the following duty of the Insured in the event of a Claim:

> You must see to it that we or our Authorized Representatives, as shown in the Declarations, are notified as soon as practicable, but in no event more than thirty (30) days from the time that an [sic] management or supervisory Employee becomes aware of the making of a Claim.

4

5. Section A.1 states that "[n]otice should include" the identity of the claimant or third-party claimant alleging the wrongful conduct; the identity of the insured who allegedly committed the wrongful conduct; the identity of any witnesses to the alleged conduct; the dates of the alleged events; and copies of any "demands, notices, summonses or legal papers received by the Insured in connection with the Claim."

6. Section A.2 provides that an Insured must authorize Lloyds or its "Authorized Representatives" to obtain records and other information; to cooperate with these entities in the investigation or defense of any Claim; and to assist these entities in the enforcement of any right against any person or organization which may be liable to the Insured because of a loss to which the Policy may apply.

7. On or about August 28, 2001, Patricia Cameron-Lytle filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC), alleging that in October 2000 she applied for a sales position with Wyler and Wyler refused to hire her because of her gender.

8. Wyler was covered under the Policy at the time Cameron-Lytle filed her charge. The Policy provided coverage under its terms for discrimination claims such as the claim made by Cameron-Lytle.

9. Wyler first received the charge a few days after November 7, 2001.

10. Wyler claims that it faxed a copy of the charge to its counsel, Donald White, and to its insurance agent, Schiff-Kreidler-Shell (SKS). White did not forward the charge to any insurance agent or company. SKS denies that it received a fax. SKS did not forward any such fax to Lloyds or to Lloyds' authorized representative, Mandell Menkes & Surdyk, LLC (MM&S).

11. On or about February 20, 2003, the EEOC issued a determination finding a violation of Title VII of the Civil Rights Act on the charge and subsequently offered an opportunity for conciliation.

12. On September 25, 2003, the EEOC filed a lawsuit against Wyler in the district court for this district on behalf of Cameron-Lytle and all similarly-situated females. By correspondence dated October 7, 2003, Wyler forwarded the lawsuit to Lloyds' representative, Amy Kovarik, and asked her to contact Wyler regarding the matter.

13. MM&S sent Wyler a letter dated October 23, 2003. The letter stated, in part, as follows:

> This letter will confirm that we first received notice that a claim has been made against Jeff Wyler Dealer Group, Inc. by Claimant Patricia Cameron-Lytle on October 7, 2003. We have also now learned that Ms. Lytle first filed an administrative charge against the Insured back on August 28, 2001. Thus, although this matter has been ongoing for almost 3 years, notice to the insurer was only provided after the EEOC filed a civil suit against the insured . . . Pending our investigation, the insurer reserves all of its rights, remedies and defenses with respect to this matter, including the right to deny coverage because it was prejudiced by the Insured's late notice of this claim.

14. Between the time Cameron-Lytle's charge was served on Wyler in November 2001 and October 7, 2003, the following took place: 1) Wyler responded to the EEOC's request for information on the charge on December 3, 2001; 2) the EEOC notified Wyler's counsel in writing on January 8, 2003, that the evidence indicated that Cameron-Lytle had been denied a sales position becuase of her gender even though she was qualified for the position; 3) the EEOC issued a determination on February 20, 2003, that the evidence obtained during investigation of the charge established a Title VII violation; 4) the EEOC issued notice on April 30, 2003, that no further efforts to conciliate the case would be made and the case was being forwarded to the EEOC's legal department for review and a litigation recommendation to be made to the Department of Justice; and 5) the EEOC filed a class action civil complaint against Wyler on September 25, 2003, on behalf of Cameron-Lytle and other similarly-situated female applicants for employment.

15. Lloyds denied coverage for the lawsuit on May 20, 2004, claiming untimely notice.

16. Four months after the denial of coverage, by letter dated September 14, 2004, Lloyds agreed to defend the lawsuit and proceeded to do so for a year.  Lloyds did not advise Wyler of any conditions for continuing the defense.

17. By letter dated August 24, 2005, Lloyds again denied coverage and filed this action.

### V.  The parties' positions

Lloyds moves for summary judgment on its claims and on Wyler's counterclaim.  Lloyds claims that the Policy terms are unambiguous and the notice provisions are not susceptible to differing reasonable interpretations; those terms required Wyler to provide notice of a Claim against it within thirty days as a condition precedent to coverage; Wyler failed to comply with this requirement, causing prejudice to Lloyds; and consequently there is no coverage for Wyler's claim under the Policy.

Wyler contends that it notified Lloyds of the Cameron-Lytle claim in a timely fashion or, at the very least, reasonably believed that it had, so that any actual delay should be excused. Wyler further argues that in any event, there was no prejudice to Lloyds.  Wyler also alleges that Lloyds is estopped from denying coverage because Lloyds' oral communications led Wyler to believe it had provided sufficient notice of the claim and no further action was required on its part.  Finally, Wyler contends that there are many facts to support a finding that Lloyds acted with bad faith in the handling of the claim.

### VI.  Applicable law

The parties agree that Ohio law governs their dispute.  The Court is bound to apply the law of Ohio's Supreme Court in this diversity action.  ***Erie R.R. v. Tompkins****,* 304 U.S. 64 (1938).  If, however, Ohio's Supreme Court has not decided the applicable law, then this Court must determine the state law from "all relevant data." ***Bailey v. V. & O Press Co.****,* 770 F.2d 601, 604 (6th Cir. 1985). An intermediate appellate court decision announcing a rule of law is a "datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

*FL Aerospace v. Aetna Casualty & Sur. Co.,* 897 F.2d 214, 218-19 (6th Cir.1990) (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940)).

In Ohio, normal contract rules apply to the interpretation of insurance contracts. *Weiss v. St. Paul Fire and Marine Ins. Co.*, 283 F.3d 790, 796 (6th Cir. 2002) (citing *King v. Nationwide Ins. Co.,* 35 Ohio St.3d 208 (1988)). The interpretation of a written contract is, in the first instance, a matter of law for the court. *Seringetti Constr. Co. v. Cincinnati,* 553 N.E.2d 1371, 1375 (Ohio Ct. App. 1988) (citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 245-46 (1978)). The primary role of the court in examining a written instrument is to ascertain and give effect to the intentions of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority,* 78 Ohio St.3d 353, 361 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.* (citing *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, syll. ¶ 1 (1987)). The court must give plain language its ordinary meaning unless "manifest absurdity" results or unless some other meaning is clearly evident from the face of the overall contents of the contract. *Id.*

If the contract language is clear and unambiguous, the contract will be enforced as written. *See Ledyard v. Auto-Owners Mut. Ins. Co.,* 739 N.E.2d 1, 3-4 (Ohio Ct. App. 2000) (citations omitted). When the relevant contract language is ambiguous, the interpretation of the contract language is a factual issue which turns on the parties' intent. *U.S. v. Donovan,* 348 F.3d 509, 512 (6th Cir. 2003). A term is ambiguous if it is reasonably susceptible of more than one meaning. *Weiss*, 283 F.3d at 796 (citing *King,* 519 N.E.2d at 1383). Any ambiguities in the language are resolved against the drafter. *Allstate Financial Corporation v. Professional Housewares Distributors, Inc.,* 999 F. Supp. 1049, 1052 (N.D. Ohio 1998) (citing *Central*

9

*Realty Co. v. Clutter,* 62 Ohio St.2d 411, 413 (1980)). The question of whether the language of an agreement is ambiguous is a question of law for the court to decide. *Donovan,* 348 F.3d at 512 (citing *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993)).

In Ohio, an insurer has a duty to act in good faith toward its insured in carrying out its responsibilities under the insurance policy. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, syll. ¶ 1 (1983). An insurer's lack of good faith in processing claims gives rise to a cause of action in tort against the insurer. *Id*. Under Ohio law, "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, syll. ¶ 1 (1994) (citations omitted).

## VII. Opinion

### A. Plaintiff's Claims

Initially, Wyler's response to the summary judgment motion raises a question as to whether the Ohio Supreme Court's holding in *Ferrando v. Auto-Owners Mutual Ins. Co.,* 98 Ohio St.3d 186 (2002), applies to determine whether Wyler breached the notice provisions of the Policy. The Supreme Court held in *Ferrando* that,

> When an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice. An insured's unreasonable delay in giving notice is presumed prejudicial to the insurer absent evidence to the contrary.

Syll., para. 1. Thus, in determining whether an insured breached a prompt notice provision, the questions to be resolved are (1) whether the insured gave timely notice, i.e., notice "within a reasonable amount of time in light of all the surrounding facts and circumstances" and, if not (2)

10

whether the insurer was actually prejudiced. *Id*. at 208.

Wyler claims that an insurer cannot avoid the holding of *Ferrando* by defining "prompt notice" as notice to be provided within a certain number of days. In support of this proposition, Wyler cites one unpublished Ohio appellate court opinion that it contends "explicitly considered whether an insurer can avoid the holding of *Ferrando* by simply defining prompt notice as notice within a certain number of days" and held that an insurer cannot. *See Vecchio v. Montgomery County, Ohio,* 2005 WL 187737 (Ohio Ct. App.). Doc. no. 52, p. 7, n. 8. Wyler contends that although *Vecchio* involved a 30-day notification requirement, the court held that whether the insurer "received notice within a reasonable length of time in light of all the surrounding circumstances was controlling" and cited *Ferrando* for this proposition. Wyler concludes that "reasonableness of the notice, and not the defined length of time in the policy, will guide a court's analysis in a late notice case."

A review of *Vecchio* discloses that the decision falls far short of establishing the proposition for which Wyler cites it. The court in *Vecchio* neither considered the issue of whether an insurer can avoid the application of *Ferrando* by specifying a time limit for providing notice in a policy nor held that *Ferrando* applies even when a specific time limit is imposed. In fact, the opinion is less than clear as to whether the appellate court deemed the 30-day limit in the policy in issue to be binding on the insured. The appellate court stated that in finding that the plaintiff had breached the policy's notice provisions by failing to give the insurer notice of the accident within 30 days, the trial court correctly reasoned that whether the insured received notice within a reasonable length of time in light of all the surrounding circumstances was controlling. The appellate court did not, however, indicate that the reasonableness test

supplants a specific notice requirement in all cases. Rather, the court appears to have considered the reasonableness of the notice because of the particular facts of the case before it, i.e., the plaintiff was not an insured under the policy but was a third-party beneficiary of his employer's underinsured motorist policy. The court found that in contrast to an insured who is a policyholder, proof of actual notice of the policy terms was required as to a third-party beneficiary such as the plaintiff. The court held based on the record before it that because the policyholder had told the plaintiff there was no coverage, whether the plaintiff acted reasonably under all of the facts and circumstances when he failed to give notice to the insurer "within the relatively short time" required under the policy was a question of fact for the jury. The court's holding and rationale in *Vecchio* provide no indication that a policyholder with knowledge of the policy's terms is not bound by a specific notice provision contained in the policy.

     Another judge from this district has held that the rule that untimely notice may be excused absent prejudice to the insurer resulting from the late notice does not apply when the notice provision imposes a specific deadline. ***See Wendy's Intern., Inc. v. Illinois Union Insur. Co.,*** 2007 WL 710242 (S.D. Ohio) (Graham, J.). The policy in *Wendy's* required that notice of a claim be given "immediately" but in no event later than sixty days after the end of the policy period. The defendant argued that the notice-prejudice rule did not apply to insurance contracts such as the one at issue where notice of a claim must be given by a specific date and that the notice provision had to be strictly enforced. The defendant relied on an unpublished Sixth Circuit decision, ***Torello v. UNUM Life Ins. Co. of Am.,*** 1999 WL 1204755 * 16 (6th Cir.), in which the court found that the plaintiff had failed to comply with the policy's specific time limit for proving his disability claim and noted that "Ohio law provides no refuge from the

12

consequences the policy explicitly imposes under such circumstances." The *Torello* court concluded that "the Ohio Supreme Court considers prejudice relevant only when an insurance policy calls for 'prompt' or 'immediate' notice" and "Ohio law . . . does not suggest that prejudice has any significance as to whether an insurer may enforce a specific time limit set forth in an insurance policy." *Id.* at *15 (citing *Am. Employers Ins. Co. v. Metro Reg'l Transit Auth.,* 12 F.3d 591, 597 (6th Cir.1993)). The plaintiffs in *Wendy's* argued that *Torello* was inapplicable to their case because the framework applied was rejected by the Ohio Supreme Court in *Ferrando*.

Judge Graham found that the reasoning of the Sixth Circuit and its analysis of Ohio insurance contract law in *Torello* was applicable to the facts of the case before him. Judge Graham concluded as follows:

> While the notice-prejudice rule has been adopted by the Ohio Supreme Court, the circumstances under which the court applied the rule in *Ferrando* are distinguishable from those in *Torello*. The Ohio Supreme Court's decision in *Ferrando* is not controlling under these circumstances because the insurance policy in that case did not include a specific date by which the insured was to notify the insurer of any claim or occurrence. Rather, the policy provided that notice of the occurrence should be provided to the insurer 'promptly' . . .
> * * *
> Reading the contract as a whole, the notice provision in the Policy provides a strict reporting requirement. Accordingly, the Court finds that Plaintiffs were required to strictly comply with the notice provision of the contract, and the notice-prejudice rule does not apply to the Policy. Plaintiff's failure to comply with the Policy's notice provision bars recovery.

2005 WL 710242 at *8-9.

This Court finds the reasoning in *Wendy's* to be persuasive. Absent any contrary caselaw supporting the proposition that the notice-prejudice standard enunciated in *Ferrando* applies when a specific notice deadline is imposed under a policy or indicating that the Ohio

13

Supreme Court would extend the notice-prejudice standard in this manner, the Court declines to extend *Ferrando* to the facts of this case. The contract clearly and unambiguously provides that notice of a claim must be given no later than thirty days from the time that a management or supervisory employee of the insured becomes aware of the claim. Thus, the question to be resolved in connection with plaintiff's motion is whether there is a genuine issue of material fact as to whether Wyler gave notice within this time period.

Wyler received notice of Cameron-Lytle's charge filed with the EEOC in November 2001 and, under the unambiguous terms of the Policy, was required to provide notice to Lloyds or its authorized representative, MM&S, within 30 days of that date as a condition of coverage. Wyler claims that it did provide timely notice. Wyler contends that its Human Resources Director, Steve Baxla, reported the charge to Wyler's insurance agent SKS by faxing a copy of the charge to SKS on November 13, 2001. *See* Steve Baxla depo., pp. 30-33, exh. KK. Wyler also claims that Baxla discussed the claim with Lloyds' representative Kovarik on numerous occasions to advise her of receipt of the claim and of Wyler's desire that Attorney Don White handle the matter, to which Kovarik assented. Baxla depo., pp. 13, 54-55. Wyler contends that White communicated with Kovarik regarding both the Cameron-Lytle claim and a second claim on which he represented Wyler, which was a claim Wyler employee Richard Higgins had filed against Wyler. White depo., pp. 23-24. White testified at his deposition that any time he communicated with Kovarik, he talked to her about both cases, including the adverse EEOC determinations on both claims and the offers to conciliate. White depo., pp. 24, 55.

Lloyds denies Wyler's allegations and alleges that MM&S first received notice of the Cameron-Lytle claim on October 7, 2003. Lloyds alleges that SKS never received the fax that

14

Baxla purportedly sent to it in November 2001 and that Wyler did not otherwise report the claim to SKS or to either Lloyds or its authorized representative. Kovarik, who departed the MM&S law firm before the October 7, 2003 notice of the Cameron-Lytle lawsuit was sent, does not deny that Baxla orally notified her of the Cameron-Lytle claim in November 2001, but neither does she recall any discussions she may have had regarding that claim or any other claim against Wyler. King (Kovarik) depo., pp. 40-55, 58.

It is apparent from the record that there is a factual dispute as to when Wyler first gave notice to Lloyds of the Cameron-Lytle claim. Because the evidence on this point is disputed, the question of whether Wyler complied with the Policy's 30-day notice requirement must be determined at trial.

As to the contents of the notice of the claim, Lloyds argues that the Insured "must" send copies of any charge or claim, identify the claimant, the alleged perpetrator and any witnesses, and provide information as to when the alleged discrimination took place in order to satisfy Section I.A of the Policy. Lloyds claims that Wyler breached the Policy by failing to comply with these notice requirements. The Policy, however, does not mandate that the insured provide this information. Rather, the Policy states that the Insured "should" provide this information with the Notice. Given the non-mandatory language, the Policy cannot be construed as requiring that the Insured provide this information as a condition precedent to coverage. Thus, Wyler is not precluded from obtaining coverage by its alleged failure to provide the information that the Policy stated an Insured "should" provide when giving notice of a claim.

**B. Defendant's Counterclaim**

The questions of fact demonstrated by the record likewise preclude summary judgment

15

on Wyler's Counterclaim.  The issues of whether Lloyds acted in bad faith in the handling of Wyler's claim and whether Lloyds is estopped from denying coverage for Wyler's claim must be determined at trial.

### VIII.  Conclusion

In accordance with the foregoing, plaintiff's motion for summary judgment is **DENIED.** This case will proceed to trial in accordance with the schedule established by the Court.

**IT IS SO ORDERED.**

                                        S/ Herman J. Weber
                                              HERMAN J. WEBER
                          SENIOR JUDGE, UNITED STATES DISTRICT COURT